**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| JACKIE MIRANDA, | ) | CASE NO. 3:21-CV-00008-JJH |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Jackie Miranda ("Miranda" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On June 9, 2016, Claimant filed an application for DIB, alleging a disability onset date of December 13, 2014. (ECF No. 13, PageID #: 444-447). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). An ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 13, PageID #: 166). On July 5, 2018, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 13, PageID #: 261). Claimant

appealed the ALJ's decision to the Appeals Council, which remanded her claim for a new hearing. (ECF No. 13, PageID #: 291-292). A new ALJ held a hearing on February 11, 2020, and issued a written decision denying Claimant's claim on April 22, 2020. (ECF No. 13, PageID #: 98-107). The ALJ's decision became final on November 12, 2020, when the Appeals Council declined further review.  (ECF No.  13, PageID #: 84).

On January 5, 2021, Claimant filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14, 16, 18). Claimant asserts the following assignments of error:

> (1) The ALJ's determination that Plaintiff retains the ability to stand and walk for four hours out of an eight hour work day is not supported by substantial evidence.
>
> (2) The ALJ failed to consider evidence which post-dates the date last insured, but which relates back to severe impairments existing prior to such date, and is probative of more severe limitations than provided for in the residual functional capacity.

(ECF No. 14 at 2).

## III. Background

### A.  Relevant Hearing Testimony

At the hearing, Claimant testified that she could not work due to her sciatic nerve, feet, and legs. (ECF No. 13, PageID #:137). She explained that she had broken her foot, ruptured her Achilles tendon, and had undergone two surgeries on her left foot and ankle by her podiatrist. Claimant testified that she was non-weight bearing for an extended period of time following her surgeries, used a wheelchair until approximately the end of 2015, and that she has used a walker or a cane since her ankle surgeries. (ECF No. 13, PageID #: 138-149). Claimant described developing numbness in her left foot and a left foot drop during 2015. (ECF No. 13, PageID #: 149). Claimant testified that prior to her date last insured, she required assistance from her husband

2

for showers, getting dressed, and cooking. (ECF No. 13, PageID #: 143-144). Claimant's brother-in-law would take her to the grocery store, where she would use a wheelchair to get around the store, and he would get the items she wanted from the shelves. (ECF No. 13, PageID #: 144).

### B.  Relevant Medical Evidence

At issue in this matter is the ALJ's limitation that Claimant had the ability to stand/walk for up to four hours in an eight-hour workday.  Accordingly, only the medical evidence relevant to Claimant's impairments related to this limitation is discussed here.

The ALJ discussed the medical evidence that supported the stand/walk limitation:

> The claimant underwent a L4-5 discectomy in 2010 (Exhibit B-3F/2).  The record documents post-surgery complaints of ongoing and progressively worse low back pain radiating to the thighs.  On exam in August 2014, there was positive SI joint tenderness bilaterally.  The claimant reported hip pain was worse with certain activities such as standing, walking, lifting and housework. Post laminectomy syndrome has been refractory to oral medications and various pain management injections that offered only temporary relief An MRI in October 2015, showed multilevel degenerative disc disease and a disc remnant at L4-5 with foraminal stenosis (Exhibits B-13F/11, B-17F/97, 110).
>
> […]
>
> The claimant underwent removal of heel spurs in 1998. She saw her podiatrist Heather Gray, D.P.M., in March 2014 for left heel pain in the Achilles tendon area, affecting her for over six months and worsening. Neurontin provided relief. Positive Tinel's signs noted on the left foot. Dr. Gray diagnosed Achilles tendonitis in both feet, told her to wear heel lifts and gave her a prescription for a CAM boot and ultrasound therapy (Exhibit B-4F/95). The left heel continued to cause severe discomfort, causing her to limp (Exhibit B-4F/80). Surgery followed in September 2014; a left osteotomy of the calcaneus, reattachment of the left Achilles tendon and gastrocnemius lengthening (Exhibit B-4F/70). Two months later, during recovery from surgery, her foot slipped out of the boot and she fell sustaining an avulsion fracture of the calcaneus (Exhibit B-4F/43). Further surgery followed in November 2014 to remove hardware from the left foot, excise calcaneal avulsion fracture and revise the prior surgery (Exhibit B-28F/34). On removal of the cast,

> the claimant wore a CAM boot and underwent physical therapy. She
> later wore diabetic shoes with custom inserts. In September 2015,
> she was wearing compression hose and walking with a cane (Exhibit
> B-4F/7, 11, 16, 26).

(ECF No. 11, PageID #: 103-104).

Claimant's record also includes medical evidence that post-dates her date of last insured that she argues is relevant to the stand/walk limitation. On January 13, 2016, Claimant's podiatrist prescribed a left ankle-foot orthosis ("AFO") for her foot drop. (ECF No. 13, PageID #: 629, 631). On October 3, 2016, Claimant underwent surgery on her lumbar spine. Frank Fumich, M.D. performed an L-3 laminectomy, revision of right-sided L-4 hemi-laminectomy and nerve root exploration, L-5 laminectomy, L3 through L5 bilateral posterolateral fusion with instrumentation at L-3, L-4 and L-5, and placement of titanium rods bilaterally. The pre-operative and post-operative diagnoses each indicated: 1) lumbar spinal stenosis; 2) neurogenic claudication; and 3) status post right sided L-4 hemi-laminectomy six years ago. (ECF No. 13-1, PageID #: 1805).

On November 7, 2018, Claimant underwent a functional capacity evaluation at St. Rita's Medical Center. This evaluation noted that the onset of Claimant's symptoms was in 2010 and that its purpose was to "determine *current* workload levels". (ECF No. 13-2, PageID #: 2817 (emphasis added)). Claimant reported low back pain rated at 7 to 8 on a 10-point scale at rest, with pain increasing with activity. At the conclusion of the evaluation, it was noted, among other limitations, that Claimant could sit constantly, but could stand and walk only occasionally. (ECF No. 13-2, PageID #: 2818).

### C. Relevant Opinion Evidence

State Agency medical physicians Teresita Cruz, M.D., (ECF No. 13, PageID #: 236-237) and Diane Manos, M.D., (ECF No. 13, PageID #: 256-257) reviewed the evidence of record on August 1, 2016 and November 10, 2016 (respectively). Each found that as of December 31, 2015,

4

Claimant's date of last insured, Claimant retained the functional capacity for light exertional work (with additional limitations) and had the ability to stand or walk up to six hours in an eight-hour workday. (ECF No. 13, PageID #: 236-237, 256-257).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 13, 2014 through her date last insured of December 31, 2015 (20 CFR 404.1571 et seq.).

> 3. Through the date last insured, the claimant had the following severe impairments: obesity, type II diabetes mellitus, degenerative disc disease in the lumbar spine, post laminectomy syndrome, degenerative joint disease in the right hip, degenerative disc disease cervical spine with stenosis, lumbar spondylosis, bilateral carpal tunnel syndrome with status post release on the right on December 9, 2015, bilateral Achilles tendon tendonitis with status post-surgical procedure on the left, epicondylitis and bicep tendonitis in the right upper extremity and status post ankle surgery. (20 CFR 404.1520(c)).

> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can stand and walk 4 hours in an 8-hour workday. She can lift no more than 10 pounds with her left upper extremity. She can occasionally push and pull. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can frequently balance. She can occasionally stoop, kneel, crouch, but never crawl. She can never reach overhead with her right arm. She can frequently handle with her right hand. She is to be able to use an ambulatory aide of a cane or walker to ambulate to the workstation.

> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 13, 2014, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(g)).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that

impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

#### 1. The RFC's limitation that Claimant be limited to standing or walking four hours in an eight-hour workday is supported by substantial evidence.

In her first issue, Claimant asserts the ALJ erred by determining that she is able to stand or walk for up to four hours of an eight-hour workday. The Commissioner argues that substantial evidence supports the ALJ's limitation. This Court agrees with the Commissioner.

Prior to determining that Claimant could not perform her past relevant work at step four, the ALJ determined Claimant's RFC. The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). Here, the ALJ determined Claimant's RFC as follows:

> to perform light work as defined in 20 CFR 404.1567(b) except she can stand and walk 4 hours in an 8-hour workday. She can lift no more than 10 pounds with her left upper extremity. She can occasionally push and pull. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can

> frequently balance. She can occasionally stoop, kneel, crouch, but
> never crawl. She can never reach overhead with her right arm. She
> can frequently handle with her right hand. She is to be able to use an
> ambulatory aide of a cane or walker to ambulate to the workstation.

(ECF No. 11, PageID #: 114). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545. "In order to establish entitlement to disability insurance benefits, an individual must establish that [s]he became 'disabled' prior to the expiration of [her] insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing 42 U.S.C. § 423(a) and (c); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). The record reflects that the Claimant's insured status expired on December 31, 2015. Claimant must therefore prove that she became disabled prior to December 31, 2015, in order to qualify for disability benefits.

Substantial evidence supports the RFC's stand/walk limitation. There is no dispute that prior to and after Claimant's foot surgery in September 2014 and revision surgery in November 2014 that Claimant was non-weight bearing and used a wheelchair or walker for mobility. However, the records demonstrate that she was fully weight-bearing in a mobility boot by January 25, 2015. (ECF No. 11, PageID #: 781). In February she had walked three miles in her mobility boot. (ECF No. 11, PageID #: 636). Her physician counseled her to continue wearing compression tights and discussed a lace-up ankle brace to wear inside her tennis shoe in order to transition from

the mobility boot. (ECF No. 11, PageID #: 638). In March 2015, Claimant continued to be full weight-bearing and was walking and participating in physical therapy and aquatic therapy. (ECF No. 11, PageID #: 793). Although still complaining of discomfort, Claimant had transitioned to wearing tennis shoes and wore house slippers at home. (ECF No. 11, PageID #: 793). At her April 2015 follow-up, Claimant was fully weight bearing in a tennis shoe. (ECF No. 11, PageID #: 797). In June 2015, Claimant's physician noted "She is full [weight bearing] in a tennis shoe. She finished physical therapy (see scanned document for full details) as she is almost out of allowed sessions and hasn't been fully complaint with her visits. She states she is doing the home exercises. She still has pain and weakness in the left foot. She is walking with a cane. She uses the wheelchair at home when she's cooking as its hard to stand for longer periods of time. She is wearing compression hose and states that the foot still swells." (ECF No. 11, PageID #: 801). The June examination revealed the following findings specific to Claimant's left foot: "tenderness with palpation along Achilles tendon. Able to wiggle toes and plantarflex at ankle joint against resistance (4+/5). Dorsiflexion against resistance is 4/5. Inversion and aversion is 4/5. Overall, strength improved from last visit. Increased in muscle tone noted to the calf since last visit." (ECF No. 11, PageID #: 803). Claimant's physician noted that Claimant was "able to dorsiflex and evert the foot" and that Claimed "walk[ed] with full dorsiflexion of the left foot and no evidence of drop foot." (ECF No. 11, PageID #: 803). Claimant's physician extended the wheelchair prescription for her use at home while cooking. (ECF No. 11, PageID #: 803). Thereafter, Claimant's medical records show that she was bearing full weight, doing home exercises, and her ankle strength continued to improve. (ECF No. 11, PageID #: 632, 634). By the end of 2015, Claimant's gait was normal, she had full or nearly full muscle strength in her lower extremities – with 4+/5 specific to her left ankle, and she did not require any assistive devices to walk. (ECF No. 11, PageID #: 815,

1028, 1160; ECF No. 11-1, PageID #: 1346).

Claimant argues that "the ALJ erred in discounting [her] testimony regarding her use of and need for a wheelchair outside of the immediate pre and post-operative periods." (ECF No. 14 at 17). Claimant testified that during the entire relevant period, she was confined to a wheelchair or was otherwise unable to walk without the use of a walker or cane. (ECF No. 11, PageID #: 151-152).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304. SSR 16-3p lists the factors relevant to the ALJ's determination at this step, which include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain, and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *7-*8; *see also Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994) (citing 20 C.F.R. § 1529(a), (c)). An ALJ is not required to expressly address all the factors listed in SSR 16-3p but should sufficiently articulate her assessment of the evidence to assure the court that she considered all relevant evidence. *Cross*, 373 F. Supp.2d at 733. When a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must assess the claimant's symptom testimony "based on a consideration of the entire case record." *Rogers*, 486 F.3d at 247; *see also Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 400 (6th Cir. 2016). To the extent that the ALJ's findings are based on an assessment of the claimant's symptom testimony, those findings are accorded great weight and deference. *Walters*, 127 F.3d at 531. While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), *report and recommendation adopted by* 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

The ALJ specified Claimant's subjective complaints:

> The claimant testified that she could not work during the period at issue because of her feet and legs. She could not walk up stairs and had a ramp at home (hearing). She asserts via her representative, that she medically required an assistive device (Exhibit B-25E/7-8).

(ECF No. 11, PageID #: 104). Claimant asserts that her inability to stand/walk for up to four hours in an eight-hour workday is supported by the objective medical evidence. First, Claimant argues that her continued prescription for the use of a wheelchair to use while cooking is evidence that

11

she was unable to stand or walk for up to four hours in an eight-hour workday as limited by the RFC. The ALJ considered this continued prescription but noted that the Claimant was walking at appointments and had a special shoe insert, which would not have been necessary if she was not walking. (ECF No. 11, PageID #: 104). Second, Claimant argues that her 2016 spinal surgery and post-operative diagnosis of lumbar spinal stenosis and neurogenic claudication support her testimony. (*See* ECF No. 14 at 15). However, a medical diagnosis of an impairment does not address the limiting effects of an impairment. The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet*, 823 F.2d at 920; *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ").

Here, the ALJ found that Claimant suffered from severe impairments including: "degenerative disc disease in the lumbar spine, post laminectomy syndrome, degenerative joint disease in the right hip, degenerative disc disease cervical spine with stenosis, lumbar spondylosis, […] bilateral Achilles tendon tendonitis with status post-surgical procedure on the left, […] status post ankle surgery." (ECF No. 11, PageID #: 101). The ALJ determined that although Claimant's impairments could reasonably be expected to cause the alleged symptoms, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (ECF No. 11, PageID #: 105). The ALJ explained "[w]hile the medical and other evidence of record support the allegations regarding the nature of these symptoms, the contentions regarding the severity of the related functional restrictions are not supported." (ECF No. 11, PageID #: 105). In reaching this conclusion, the ALJ considered Claimant's testimony in conjunction with the medical evidence and explained:

> In considering the claimant's allegations and reports, I concede the
> claimant's degenerative spine impairments have clearly imposed

some limitation on his [sic] functioning. However, the record as a whole fails to corroborate the claimant's reported degree of limitation from the severe impairments. [ …] Medical records document assistive devices prescribed prior to and after foot surgery in September 2014 and revision surgery in November 2014 in order to gradually bear weight with the left foot. In February 2015, while she wore the CAM boot and slippers at home, the claimant walked about three miles in the CAM boot after which pain increased (Exhibit B-4F/11). In November 2015, she was bearing full weight and doing home exercises but still had pain. She used a cane to walk and the wheelchair at home for cooking that required she stand for long (Exhibit B-4F/7). She had a script for the wheelchair. However, she was walking at appointments and got special shoe inserts to walk that if in a wheelchair all the time, she would have not needed. The residual functional capacity herein provides for the use of a cane or walker for ambulation to the workstation as well as limitations in balancing.

(ECF No. 11, PageID #:104).

The ALJ's decision discussed Claimant's daily activities, treatments other than medication, and measures Claimant took to be able to walk. The Court finds that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. There exists, therefore, no compelling reason for the Court to disturb that finding. *Cross,* 373 F. Supp. 2d at 732.

Although the decision does not discuss Claimant's 2016 spinal surgery, substantial evidence supports the ALJ's conclusion that Claimant was able to walk/stand for up to four hours in an eight-hour workday as of her date of last insured, December 31, 2015. Even if substantial evidence also supported greater limitations, this Court cannot remand where, as detailed above, substantial evidence exists supports the ALJ's finding. Additionally, as discussed in Claimant's second issue below, a more restrictive limitation would not have changed the outcome as the vocational expert testified that significant jobs exist in the national economy even under stricter limitations.

Finally, the ALJ did not "impermissibly set her own expertise against that of the treating physician" as Claimant asserts. (*See* ECF No. 14 at 17). In weighing the medical evidence, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009).  Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id.* (internal quotations omitted). Claimant argues that the ALJ played doctor by finding that Claimant could stand/walk for up to four hours despite her podiatrist's extension of the prescription for a wheelchair for use while cooking. Claimant's argument relies on an inferred opinion made by the podiatrist when no such opinion exists. In writing the prescription, the podiatrist did not opine that Claimant was unable to stand or walk for any period of time; rather, the podiatrist heard Claimant's subjective complaints and authorized continued use of a wheelchair for the limited purpose of cooking. At that same visit, the podiatrist noted that Claimant was fully weight bearing in a tennis shoe and there was no evidence of foot drop. (ECF No. 11, PageID #: 801-805). Accordingly, there is no error here.

This Court finds that substantial evidence supports the ALJ's limitation and, thus, the decision must be upheld.

### 2. Any error in the ALJ's failure to consider evidence dated after Claimant's date of last insured is harmless error.

In her second issue, Claimant argues that the ALJ failed to consider evidence that post-dates the date last insured but relates back to severe impairments found to exist prior to such date. (ECF No. 14 at 18). Claimant states that the ALJ failed to consider the following medical evidence that post-dates her dates of last insured: 1) a January 13, 2016 prescription for an AFO written by Claimant's podiatrist; 2) the October 2016 operative report regarding decompressive

14

laminectomies at L-3, L-4 and L-5, and posterolateral fusion with instrumentation and rod placement from L-3 through L-5; and 3) the November 2018 functional capacity evaluation.[1] The Commissioner argues that even if these records were relevant, "[r]emand is not warranted where the evidence would not affect the outcome of the case." (ECF No. 16 at 11 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

In order to establish eligibility for disability benefits a claimant must establish that she became disabled prior to the expiration of her insured status. *Carter v. Comm'r of Soc. Sec. Admin.*, No. 5:12CV2321, 2013 WL 3940874, at *6 (N.D. Ohio July 30, 2013) (citing 42 U.S.C. § 423(c)(1); *Moon*, 923 F.2d at 1182; *Higgs*, 880 F.2d at 862). "'[A]s a general rule, the only medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status.'" *Id.* (quoting *Forshee v. Comm'r of Soc. Sec.*, 2012 WL 1672974 at * 8 (E.D. Mich. April 11, 2012)). However, the Sixth Circuit has found that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time." *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976). "Federal courts have therefore held that 'medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status.'" *Carter*, 2013 WL 3940874 at *6 (quoting *Anderson v. Comm'r of Soc. Sec.*, 440 F.Supp.2d 696, 699 (E.D. Mich. 2006) (citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979); and *Begley*, 544 F.2d at 1354). *See also Forshee*, 2012 WL 1672974 at * 8*; O'Bert v. Comm'r of Soc. Sec.*, 2009 WL 3010846 at * 11 (S.D. Ohio Sept.21, 2009)). When evidence dated

---

[1] Claimant states the functional capacity evaluation was completed in January 2018. (ECF No. 14 at 21). However, upon review of the record, it appears that the evaluation was completed in November 2018. (*See* ECF No 13-2, PageID #: 2817).

after a claimant's date of last insured is relevant, "the date of that evidence is a factor to be considered in assigning relative weight to that evidence." *Sweitzer v. Astrue*, 2009 WL 3064665 at * 3 (E.D. Tenn. Sept.23, 2009). *See also Higgs*, 880 F.2d at 863 (finding that evidence dated after a claimant's date of last insured evidence may be considered but a delay of two years renders that evidence "minimally probative").

Here, the ALJ was presented with an onset date of December 13, 2014, and a date of last insured of December 31, 2015. Accordingly, in order to qualify for disability benefits, Claimant had to establish that her disability commenced prior to December 31, 2015. *See Moon*, 923 F.2d at 1182; *Higgs*, 880 F.2d at 862. Claimant maintains the medical evidence from both before and after that date indicate her impairments caused greater limitations in her ability to stand/walk than listed in the RFC and that the ALJ erred in finding otherwise. The Commissioner does not appear to dispute that the ALJ failed to consider medical records dated after Claimant's date of last insured. (ECF No. 16 at 11-13). Nonetheless, the Commissioner argues that remand is not warranted because the outcome would have been the same even had the ALJ considered this evidence.

This Court agrees with the Commissioner. Assuming, without finding, that the evidence dated after Claimant's date of last insured relates back to Claimant's limitations, any error in the ALJ's consideration of this evidence is harmless as the outcome would have been the same.

At step five the Commissioner has the burden of proof to show "that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "The step five analysis is meant to determine, given the severity of the impairments already proven, whether there are jobs in the economy which a claimant can perform." *Id.* (emphasis added). The Commissioner properly met their burden to determine that there is work

16

available in the economy that the Claimant can perform at step five. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation marks and citation omitted). "This substantial evidence may be in the form of vocational expert testimony in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Baker v. Barnhart*, 182 F. App'x 497, 500 (6th Cir. 2006) (citations and internal quotation marks omitted). The Commissioner met this burden through the testimony of the vocational expert, who testified that work exists in the national economy that accommodates Claimant's vocational factors and RFC even with an additional limitation that she use a wheelchair at all times or be limited to sedentary exertional level.

During the hearing, the ALJ posed the following hypothetical:

> assume a hypothetical individual of claimant's age, educational, and vocational background able to do light work, except she can stand and walk four hours in a [sic] eight-hour workday. lift no more than ten pounds with her left upper extremity. She can [ ] occasionally push and pull. She can occasionally climb ramps and stairs. She could never climb ladders, ropes or scaffolds. She can frequently balance. She can occasionally stoop, kneel, crouch – I'm gonna put but never crawl. She can never reach overhead with her right arm. She can frequently handle with her right hand. She is to be able to use an ambulatory aid of a cane or walker to ambulate to the workstation.

(ECF No. 13, PageID #: 157). The vocational expert testified that such a person would not be able to perform Claimant's past relevant work but that there are significant jobs in the national economy that such a person could perform. (ECF No. 13, PageID #: 158). Ultimately, the limitations contained in this hypothetical were adopted by the ALJ for the RFC. (*Compare* ECF No. 13, PageID #: 114, *with* ECF No. 13, PageID #: 157). However, the ALJ posed several additional

17

hypotheticals.

In a second hypothetical, the ALJ presented the same limitations as in the first hypothetical but further limited the individual to sedentary work. (ECF No. 13, PageID #: 158). The vocational expert testified that there are significant jobs in the national economy which such a person could perform. (ECF No. 13, PageID #: 159). By definition, "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." SSR 83-10. "'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles." SSR 83-10. Next, the ALJ altered the hypotheticals to include the use of a wheelchair full time. The vocational expert testified that full time use of a wheelchair would preclude the jobs identified in the light exertional level, but that jobs would be available in significant numbers at the sedentary level. (ECF No. 13, PageID #: 159-160).

Claimant does not explain what level of exertion she believes that the ALJ should have found or her desired stand/walk limitation. Instead, Claimant states only that she could not stand or walk for the four hours set forth in the RFC. However, even had the evidence supported a greater restriction to either sedentary work or a limitation for full time use of a wheelchair, the vocational expert testified that jobs existed in the national economy for each of these stricter limitations. Thus, the vocational expert's opinion is itself substantial evidence for the ALJ's step 5 conclusion that there are jobs that exist in significant numbers in the national economy that Claimant could do despite her limitations even assuming greater limitations than those found by the ALJ. *Smith v.*

*Halter,* 307 F.3d 377, 378 (6th Cir. 2001) (citation omitted); *Baker*, 182 F. App'x at 500.

Accordingly, even if the ALJ erred by failing to consider the evidence dated after Claimant's date of last insured, the error is harmless because the outcome would have been the same. *See Bass v. McMahon*, 499 F.3d 506, 514 (6th Cir. 2007) (remand not required where new evidence would not have changed the ALJ's decision).

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: February 8, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).